Girardeau A. SPANN, et al., Plaintiffs,

v.

The CARLEY CAPITAL GROUP, et al., Defendants.

Girardeau A. SPANN, et al., Plaintiffs,

v.

WORDS & COMPANY, INC., et al., Defendants.

Girardeau A. SPANN, et al., Plaintiffs,

v.

ZOSLOW ASSOCIATES, INC., Defendant.

Girardeau A. SPANN, et al., Plaintiffs,

v.

The RESTEC CORPORATION, Defendant.

Civ. A. Nos. 87–0054 (HHG), 87–1154 (HHG), 87–1155 (HHG) and 87–1156 (HHG).

United States District Court, District of Columbia,

Dec. 13, 1988.

Consent Order Sept. 8, 1989.

William H. Jeffress, Jr., David G. Webbert and Niki Kuckes, Miller, Cassidy, Larroca & Lewin, Kerry Alan Scanlon, NAACP Legal and Educ. Defense Fund and Roderic V.O. Boggs, Washington Lawyers' Committee for Civil Rights Under Law, Washington, D.C., for plaintiffs Girardeau A. Spann, the Fair Housing Council of Greater and Metropolitan Washington Planning & Housing Ass'n.

Judith A. Miller, Howard W. Gutman, Gregory A. Baer and George A. Borden, Williams & Connolly, Washington, D.C., for defendants Potomac Inv. Associates, Rock Run Ltd. Partnership, and Avenel Corp.

Howard G. Slavit, Philip B. Zipin and Steven J. Wadyka, Jr., Corriea, Tierney & Slavit, Washington, D.C., for defendants Words & Co., Inc. and Richard W. Barrow.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

On May 22, 1987, the Court ordered a dismissal of the actions in *Spann v. Colo-*

*nial Village, Inc.*, C.A. Nos. 86–2917, 86–3196, and 86–3268. Various other suits involving related issues were pending before this Court at that time in *Spann v. Carley Capital Group*, C.A. No. 87–0054; *Spann v. Words & Company*, C.A. No. 87–1154; *Spann v. Zoslow Associates*, C.A. No. 87–1155; and *Spann v. Restec Corporation*, C.A. No. 87–1156 (hereinafter generally the "*Carley* actions"), and the Court on June 4, 1987, ordered plaintiffs in these cases to distinguish their claims from those asserted in *Colonial Village.* On June 15, 1987, the *Colonial Village* plaintiffs appealed from this Court's May 22, 1987 order, and on July 21, 1987, they moved for a stay of the proceedings in the *Carley* actions pending the outcome of the *Colonial Village* appeal. Some of the defendants in the *Carley* actions did not oppose the stay request, and others requested instead of a stay a dismissal with or without prejudice. The Court on February 11, 1988 granted plaintiffs' stay request.

In April of this year, the Court of Appeals dismissed the appeal in *Colonial Village* without prejudice for lack of a final order under Fed.R.Civ.P. 54(b). Subsequently, the plaintiffs filed a motion requesting this Court to enter a final judgment so that they could proceed with their appeal. On October 13, 1988, this Court entered an order denying a motion of Mobil Land Development Corporation to dismiss or quash service, and motions of another defendant for Rule 11 sanctions. The resolution of those two issues made judgment in those cases final. Mobil Land Development then moved to reconsider; the Court denied that motion on November 9, 1988, clearing the way for appeal in the *Colonial Village* cases; and the plaintiffs in those cases filed notices of appeal on November 10, 1988.

Given the length of time that had already elapsed and that was likely to elapse as a consequence of the second appeal, the Court decided on September 30, 1988, that, rather than to continue in effect the stay pending appeal, it would dismiss the *Carley* actions without prejudice, unless plaintiffs demonstrated that such a dismissal would subsequently bar these actions on statute of limitations grounds. Plaintiffs thereafter duly filed a memorandum asserting that even a subsequent reconsideration by the Court of the dismissal under Rule 60(b), Fed.R.Civ.P., would leave them vulnerable to a statute of limitations defense. Although it is not entirely clear that plaintiffs' fear in that respect is correct,[1] the Court has no wish to gamble with plaintiffs' causes of action. Accordingly, it will not dismiss their lawsuits on that basis.

That leaves the question of what should be done next. The Court could, of course, maintain the status quo of a stay pending the decision of the Court of Appeals in *Colonial Village.* However, in view of the delay that has already occurred, and the further delay that is likely from a consideration of that case by the appellate court on the merits of *Colonial Village*, it seems more appropriate to proceed here with the merits of the *Carley* actions.

All the defendants submitting responses to plaintiffs' memorandum that purports to distinguish these cases from *Colonial Village* claim that the Court lacks jurisdiction under the three statutes cited in the complaint—42 U.S.C. § 1981, 42 U.S.C. § 1982, and the Fair Housing Act, 42 U.S.C. § 3604.[2] The section 1981–1982 issue was

---

1. *Compare* 5 Moore's Federal Practice 41.05[2] at 51–67; *Cardio–Medical Associates, Ltd. v. Crozer–Chester Medical Center*, 721 F.2d 68, 77 (3d Cir.1983) *with Twarozynski v. Meijer*, 841 F.2d 1127 (6th Cir.1988), *and Henschel v. Herrington*, C.A. No. 86–3473, 1988 WL 16304 (D.D.C.1988) (H. Greene, J.) (unpublished).

2. In their complaints in these four consolidated cases, the plaintiffs alleged causes of action under both sections 3604(a) and 3604(c). Section 3604(a) prohibits refusals to sell or rent or otherwise make unavailable housing because of race. Section 3604(c) bars discriminatory advertising. Several of the defendants have requested specifically a dismissal of the section 3604(a) cause of action on the ground that the plaintiffs have not claimed that they were denied the opportunity to purchase or rent housing. Indeed, neither plaintiffs' memorandum distinguishing *Colonial Village* nor its reply memorandum, addresses section 3604(a). The Court will dismiss all the claims based on section 3604(a).

addressed in the *Colonial Village* Opinion, and the Court sees no basis for reconsidering its view that these provisions do not establish a claim in the advertising context. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968).

■■■ The situation is different, however, with respect to the Fair Housing Act. The Court perceived no difficulty with respect to plaintiffs' reliance on that Act then, and it perceives no difficulty with their reliance thereon now. The Act makes it unlawful *inter alia* to publish any advertisement with respect to the sale or rental of housing that indicates any preference or limitation based on race or color. 42 U.S.C. § 3604(c). Clearly, then, the subject matter of the lawsuit is covered by the statute. As for the limitation period under section 3610(b) and/or section 3610(d) which apply to some of these actions,[3] and under section 3612(a), which govern others,[4] plainly the suits were filed within the appropriate time periods. Nor does section 3610(d) bar these actions as claimed by GLM. That section does not permit suit to be filed pursuant to the Fair Housing Act if a state or local remedy substantially equivalent to that established by the Act is available. The District of Columbia Human Rights Law, D.C.Code § 1–2556, is governed by a one-year statute of limitations, a period that has run with respect to the practices here complained of on the part of GLM. Thus, no local remedy is available.

■■■ More substantively, the defendants argue that the Court's *Colonial Village* decision is dispositive here on the facts, and that the actions should be dismissed, or summary judgment granted, on the basis that the complaints fail to state claims upon which relief may be granted. In order to consider that argument it is of course necessary to restate briefly what the Court decided in *Colonial Village*. The Court there held that if in real estate advertisements some photographs feature white models, some black models, and some of both, no violation of the Act occurs merely because the races are not represented proportionately to population, or because black models are not included in every display, unless an intention to discriminate is shown by extrinsic evidence.

Contrary to defendants' assertions, it may be that the conditions referred to in *Colonial Village* as establishing violations are present here. Plaintiffs claim—at this stage of the proceedings without contradiction[5]—that during the periods of time covered by the complaints, advertisements were published by defendants that failed to include a single black model, and that in other respects as well intentional racial discrimination occurred. On this basis, there is no warrant for dismissing the complaints, in whole or in part.[6] Moreover, as indicated above, it is now appropriate that these actions shall proceed forward.

Accordingly, for the reasons stated, it is this 12th day of December, 1988

ORDERED that the motion of GLM Equities for summary judgment and dismissal, and the requests by the other defendants for dismissal with or without prejudice, be and they are hereby denied, except that plaintiffs' claims pursuant to 42 U.S.C. §§ 1981 and 1982 and 42 U.S.C. § 3604(a) be and they are hereby dismissed; and it is further

ORDERED that the stay entered on February 11, 1988, be and it is hereby vacated; and it is further

---

**3.** Actions under section 3610 were filed against Restec in the *Restec* case; Zoslow in the *Zoslow* case; and against Richard Barrow, Words & Company, and GLM Associates in the *Words & Company* case.

**4.** Actions under section 3612 were filed against the Carley Capital Group, ECO Corporation, and West & Brady, Inc., in the *Carley Capital Group* case; and against Words & Company, Richard Barrow, Anthony Natelli, Potomac Investment Associates, Rock Run Limited Partnership, and

Avenel Corporation in the *Words & Company* case.

**5.** On their motions to dismiss or for summary judgment, the Court is precluded from accepting as correct defendants' disputed version of factual issues.

**6.** Excepting, again, the section 1981 and 1982 actions, and the section 3604(a) cause of action.

**4**

ORDERED that discovery shall be cut-off as of February 10, 1989; and it is further

ORDERED that any additional dispositive motions shall be filed by February 17, 1989, or they shall be deemed waived; and it is further

ORDERED that a status call will be held on February 24, 1989, at 9:45 a.m., in Courtroom No. 1, to determine a date for trial.

### CONSENT ORDER

In this Complaint, the plaintiffs have alleged that the defendants engaged in racially discriminatory housing practices by using only white human models in their pictorial real estate advertisements to indicate a racial preference and by failing to display the equal housing opportunity logotype in conformance with federal regulations, in violation of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982. The plaintiffs also filed a complaint against the defendants alleging these discriminatory advertising practices with the District of Columbia Office of Human Rights, and further alleging violations of the above laws and the District of Columbia Human Rights Act of 1977.

Plaintiff Girardeau A. Spann is a black homeseeker and citizen of the United States who resides in the District of Columbia. Plaintiffs Fair Housing Council of Greater Washington and Metropolitan Washington Planning & Housing Association, Inc. are both non-profit fair housing organizations operating within the metropolitan area of Washington, D.C.

Defendants Potomac Investment Associates, Rock Run Limited Partnership, and Avenel Corporation have performed various roles contributing to the development or advertising of the Avenel housing development in Potomac, Maryland. Defendants Words & Company, Inc. and Richard W. Barrow produced the advertisements for the Avenel development, as well as producing advertisements for numerous other housing and apartment complexes. In their answers, the defendants denied that they have engaged in any discriminatory advertising practices in violation of any federal or state laws.

It appearing to the Court that the parties have waived hearings and findings of fact and conclusions of law on all issues raised in the pleadings and have agreed to the entry of this Order, the following provisions are made pursuant to their agreement. By agreeing to the entry of this Consent Order, the parties seek to resolve this litigation and the related administrative actions, and the defendants do not admit any allegation in the Complaint or to any allegations of unlawful conduct.

### I.  GENERAL PROVISIONS

THEREFORE, IT IS ORDERED that the defendants (as defined in Section II A) and their agents, employees, and successors be, and each of them is, hereby permanently enjoined from:

1. Making, printing or publishing or causing to be made, printed or published, any verbal or written notice, statement or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation or discrimination based on race, color, religion, sex, national origin, handicap or familial status.

2. Refusing or failing to show, sell, rent, negotiate for, or otherwise making unavailable or denying, a dwelling to any person because of race, color, religion, sex, national origin, handicap or familial status.

3. Discriminating in any manner whatsoever against any person because of race, color, religion, sex, national origin, handicap or familial status in the sale or rental of dwellings, in the provision of services in connection therewith, or in the marketing, promotion, advertising, or display of such dwellings.

### II.  ADVERTISING PROVISIONS

IT IS FURTHER ORDERED that all future real estate advertising practices of the defendants shall be conducted in a manner that does not discriminate or otherwise violate the Fair Housing Act of 1968, as amended, the Civil Rights Act of 1866, or

the District of Columbia Human Rights Act of 1977, or constitute an attempt to circumvent the terms of this Order. The remainder of this Consent Order describes specific requirements applicable to future real estate advertisements made or published by or on behalf of the defendants, as well as defendants' recordkeeping obligations and settlement of plaintiffs' claims for damages, costs and attorneys' fees. These terms are agreed to in order to resolve the instant controversy, comply with relevant laws, and compensate for certain past industry-wide practices.

## A. *Definitions*

For purposes of the provisions in Section II ("Advertising Provisions") of this Consent Order, the following terms and definitions apply.

1. *Avenel Defendants*—Potomac Investment Associates, each general partner thereof, Rock Run Limited Partnership, Avenel Corporation, the individual officers and directors of the above entities, and any real estate development companies wholly or partially controlled, now or in the future, by any of the individual officers or directors of the above organizations or by any of the general partners of Potomac Investment Associates. References to advertisements "by or on behalf of" the Avenel defendants shall include all advertisements for the Avenel complex generally and all advertisements which any of the Avenel defendants reviewed or approved, but shall not otherwise include advertising placed and paid for individually by any of the independent non-party homebuilders at Avenel, designed to promote their independently owned residences.

2. *Words Defendants*—Richard W. Barrow, Words & Company, Inc., the individual officers and directors of Words & Company, Inc., and any advertising company in which, now or in the future, Richard W. Barrow or any of the individual officers or directors of Words & Company, Inc., has a fifty percent or greater interest or de facto control.

3. *Real estate advertisement*—any notice, statement or advertisement with respect to the sale or rental of a dwelling, including but not limited to houses, condominiums, cooperatives and apartments.

4. *Human model*—any representation of all or a part of a human being by drawing, photograph, or any other means. A human model whose racial identity is ambiguous from the real estate advertisement in which the human model appears shall be deemed a white human model for purposes of determining compliance with this Order; provided, however, that any real estate advertisement which depicts only stick figures or a crowd in the distant background and in which the racial identity of all the human models depicted is clearly unidentifiable shall not be deemed to be a human model advertisement for purposes of determining compliance with this Order.

5. *Made or published*—made, printed or published or caused to be made, printed or published in any pictorial media, including but not limited to newspapers, magazines, brochures, video tapes, or television. As used in the previous sentence, the word "made" means to have participated in designing, producing, drafting the equal housing opportunity logotype or statement, photographing, revising, or selecting a real estate advertisement.

6. *Greater metropolitan Washington, D.C. area*—the Standard Metropolitan Statistical Area surrounding Washington, D.C. as defined by the United States Census Bureau.

## B. *Integrated Use of Human Models*

Beginning immediately, all real estate advertising campaigns made or published by or on behalf of the Avenel or Words defendants that depict human models shall be clearly definable as reasonably represent-

ing majority and minority racial groups in the population of the metropolitan area where the ad is published. When made or published in the greater metropolitan Washington, D.C. area, such advertisements must meet the following requirements:

(1) *Advertisements depicting one or two human models (Category 1).* In such real estate advertisements, one or more black human models must be included in at least one out of every three consecutive advertisements that appear in a given publication, TV channel or other advertising outlet to advertise a particular residential development or complex. Similarly, one or more black human models must be included in at least one out of every three such consecutive advertisements that appear in a given advertising medium to advertise multiple developments or no particular development.

(2) *Advertisements depicting groups of three or more human models (Category 2).* In each such real estate advertisement, black human models must constitute at least 33% of all the models in the ad—*i.e.,* at least one black in an ad depicting three human models; at least two blacks in an ad depicting four, five, or six human models; at least three blacks in an ad depicting seven, eight, or nine human models; etc.

(3) Black human models must be depicted in a manner, size and setting generally comparable to the depiction of white human models in any particular advertisement or group of advertisements made or published.

(4) In addition to the above requirements, the Avenel and Words defendants shall make reasonable efforts to include human models from other minority groups in some of the real estate advertisements made or published by them or on their behalf.

## C. Continued Use of Human Models

In light of their past practice of using human model ads, the Avenel and Words defendants shall continue to use human models in their real estate advertisements, which shall be integrated in accordance with the terms of Section B above (Inte-

grated Use of Human Models). Based on all the circumstances, including the integrated human model real estate advertisements published on behalf of the Avenel defendants prior to the entry of this Order, the Avenel defendants shall satisfy their obligation to continue using human model advertising by including human models in at least one-quarter of their real estate advertisements (excluding any classified advertisements) that appear in publication during the next two years. However, in no event shall the Avenel defendants publish fewer than thirty-five half-page (or larger) Category 2 human model real estate advertisements.

Based on all the circumstances, including the integrated human model advertisements produced by the Words defendants prior to the entry of this Order, the Words defendants shall satisfy their obligation to continue using human model advertising by depicting human models in at least one-half of the proposed designs of real estate advertisements in the next five years that the Words defendants submit to their clients for approval and production. In addition, the Words defendants shall, within thirty days of the date of this Order, include integrated human model real estate advertisements in any materials or portfolio they normally show to potential clients, and shall eliminate therefrom any nonconforming Category 2 human model real estate advertisements.

## D. Equal Housing Opportunity Logo or Statement

Beginning immediately, any real estate advertisements made or published by or on behalf of the Avenel or Words defendants shall comply with the Equal Housing Opportunity logotype regulations currently published at 24 C.F.R. 109.30(a) (and Appendices). All real estate advertisements four column inches or larger must:

(1) display the Equal Housing Opportunity logo, which includes the "Equal Housing Opportunity" slogan, as pictured at 24 C.F.R. 109.30 (appendix), and meet the following minimum size requirements:

i. half-page ad or larger—logo 2″ × 2″;

ii. one-eighth page to half-page ad—logo 1″ × 1″

iii. four column inches to one-eighth page—logo ½″ × ½″; or

(2) include the following statement:

"We are pledged to the letter and spirit of U.S. policy for the achievement of equal housing opportunity throughout the Nation. We encourage and support an affirmative advertising and marketing program in which there are no barriers to obtaining housing because of race, color, religion, sex, national origin, handicap or familial status."

All logos and statements must be clearly visible. The above logo size requirements apply to standard size newspaper pages. The size of logos may be reduced proportionately for smaller pages, except that no logo may be smaller than ½″ × ½″. If a statement is used, it must be printed in display face roughly equivalent to other print found in the advertisement.

### E. *Termination Provision*

The Words defendants have represented that they do not have any control over which advertisements ultimately appear in publication on behalf of their clients. This Section sets forth the Words defendants' obligations when, due to circumstances beyond the Words' defendants' control, real estate advertisements produced by them appear in advertising media in violation of this Order's terms.

Specifically, if a real estate advertisement produced in whole or in part by the Words defendants appears in any medium within eighteen months of the Words defendants' delivery of the advertisement to their client and is not integrated in accordance with the requirements of Section B or fails to display the equal housing opportunity logo or statement as required by Section D ("non-conforming advertisement") the Words defendants shall send a letter to the client for whom or on whose behalf the advertisement was made, reminding the client of the Words defendants' obligations hereunder and of the requirements of the fair housing laws. In that letter, the Words defendants will also request the client to remedy the non-conforming advertisement immediately. If the non-conforming advertisement appears a second time in any medium, the Words defendants shall terminate all work for that client which involves real estate advertising or marketing. Such work may be resumed in the future only after the client has published a corresponding number of racially integrated and nondiscriminatory advertisements sufficient to remedy the non-conforming advertisements.

If the Words defendants take the steps specified in this Section or if the Words defendants fail to discover that a non-conforming advertisement has appeared despite the Words defendants having made reasonably diligent efforts to keep informed of the advertisements which appear on behalf of their clients, and if the advertisement(s) they submitted to the client for publication were in compliance with the terms of this Order, including, in the case of Category 1 ads, proof that at least one advertisement depicting black models was submitted to the client together with the all-white advertisement that appeared in publication, the Words defendants shall not be deemed to be in violation of this Order.

### F. *Flexibility of Advertising*

Other than the requirements agreed to above, the Avenel and Words defendants shall have complete freedom and flexibility regarding their business decisions related to advertising, marketing, and publicity.

### G. *Recordkeeping*

(1) Beginning thirty (30) days from the date of this Order, the Avenel and Words defendants shall advise all current employees (and within fifteen (15) days of hiring, all new employees) who have responsibilities for the creation, editing, placement, circulation or publication of advertisements, of the company's nondiscriminatory policies and practices, the provisions of this Order, and the requirements of the fair housing laws.

(2) The Avenel defendants shall require such employees to sign the statement iden-

tified as Attachment A–1 to this Order, and the Words defendants shall require such employees to sign the statement identified as Attachment A–2 to this Order. All signed copies of the statement shall be retained by the Avenel and Words defendants, respectively, and, upon request, shall be made available to plaintiffs' undersigned counsel or other designated representative.

(3) Beginning immediately, the Avenel defendants will maintain two copies of all real estate display advertisements published by or on their behalf, and the Words defendants will maintain two copies of all proposed designs of real estate display advertisements submitted by them to their clients and two copies of all real estate display advertisements published in any advertising medium if the Words defendants placed that advertisement with the advertising medium. (Defendants need only maintain one copy if they agree to unconditionally surrender such copy upon request by plaintiffs' undersigned counsel or other designated representative.) At least one copy shall be the actual complete newspaper page, videotape, or other medium in which each ad is published. The two copies shall be maintained by the Avenel and Words defendants for two years from the date of publication of each ad.

(4) The Avenel defendants will also record, on weekly data forms identical to the form attached to this Order as Attachment B, specific information about every real estate display ad published by or on behalf of the Avenel defendants. The Words defendants will also record, on weekly data forms identical to the form attached to this Order as Attachment B, specific information about every proposed design of a real estate display advertisement submitted by the Words defendants to their clients and every real estate display advertisement produced by the Words defendants that appears in publication if the Words defendants placed that advertisement with the advertising medium. These forms shall be maintained for three years after the date of each respective week.

(5) Every six months, the Avenel and Words defendants shall provide a summary of the weekly data to the plaintiffs' undersigned counsel or other designated representative on forms identical to the form attached to this Order as Attachment C. Upon request, defendants will also make available to plaintiffs' undersigned counsel or other designated representative the copies of the advertisements they have saved and the weekly data forms they have compiled.

(6) In addition, the Words defendants agree to fully document their actions in relation to the Termination Provision set forth in Section F, above, and to provide such documentation to plaintiffs' undersigned counsel or other designated representative upon request.

(7) If either the Avenel or Words defendants are found in the future by the Court to have violated this Order, these recordkeeping obligations shall continue for those defendants for an additional five years beyond the expiration date. Otherwise, these recordkeeping obligations shall expire five years from the effective date of this Order.

## III. TERMS OF OBLIGATIONS

IT IS FURTHER ORDERED that the provisions set forth in Paragraph C of Section II of this Order (Continued Use of Human Models), and defendants' obligations described therein, shall continue for the Avenel defendants for a period of two years and for the Words defendants for a period of five years, respectively, and that the provisions set forth in Paragraph G (Recordkeeping), and defendants' obligations described thereunder, shall continue for the Avenel and Words defendants for a period of five years, subject to the conditions previously set forth. All other provisions and obligations of the Avenel and Words defendants provided by this Consent Order are continuing in nature and are not so limited. The Court will retain jurisdiction of the action for five years from the date hereof and for such time thereafter as is necessary to effectuate the purposes of this Consent Order.

## IV. DISPUTE RESOLUTION

IT IS FURTHER ORDERED that if during the effective term of this Order plaintiffs have a complaint against the Avenel or Words defendants arising out of information furnished pursuant to this Order or a complaint arising out of an alleged violation or breach of the terms hereof, plaintiffs, through counsel, will notify such defendants in writing of the substance of their complaint. Thereafter, the defendants so notified shall have twenty (20) days after receipt of the complaint to investigate and remedy any alleged deficiency. In the event of a continued disagreement among the parties as to the appropriate resolution of the complaint, plaintiffs may initiate appropriate action with the Court, setting forth the inability of the parties to resolve the dispute. If a hearing is required, the prevailing party may apply to the Court for reasonable attorneys' fees, which application shall be governed by the provisions set forth in 42 U.S.C. §§ 1988, 3612 and prevailing case law pursuant thereto.

## V. MONETARY SETTLEMENT

The Avenel defendants and the Words defendants shall pay to plaintiffs by check to Miller, Cassidy, Larroca & Lewin, within two (2) business days from the date this Order is signed by the Court, the sum of $325,000.00, including $200,000.00 from the Avenel defendants and $125,000.00 from the Words defendants. Upon receipt of the full $325,000.00, plaintiffs shall then dismiss with prejudice all their claims in this action for damages, attorneys' fees and costs against the Avenel defendants and against the Words defendants, and plaintiffs shall then also dismiss their administrative claims against the Avenel defendants and against the Words defendants in Docket No. 88–112–H (CN) before the District of Columbia Office of Human Rights and against the Words defendants in Docket Nos. 86–H–213(E) and 86–H–218(A) before that Office.

## ATTACHMENT A–1

I have been instructed about [defendant's] fair housing advertising policies, which are designed to ensure that all prospective buyers or renters, without regard to race, sex, national origin, religion, handicap or familial status are given the same invitation or "message" that our housing is open to them and that they would be welcome as residents in our development. I understand that this company has signed a consent decree to further promote this fair housing advertising policy.

Specifically, I am aware of this firm's obligation to ensure that a third of the human models depicted in our real estate advertisements published in the greater metropolitan Washington, D.C. area are black. I also understand the requirement that all of our advertisements must contain the equal housing opportunity logo, statement or slogan in conformance with federal regulations. I have been instructed about and fully understand my individual responsibilities related to these requirements, including any recordkeeping and reporting duties connected therewith.

I further understand that the above-described duties are required terms of my employment with this company and that any breach or failure to comply with such duties may subject me to dismissal or other disciplinary action as would the breach of any other condition of employment.

_____
Signature                    Date

_____
(Employee or Agent)

## ATTACHMENT A–2

I have been instructed about [defendant's] fair housing advertising policies, which are designed to ensure that all advertising designed or produced by us gives an invitation or "message" that the housing advertised is open to all prospective buyers or renters, without regard to race, sex, national origin, religion, handicap or familial status.

Specifically, I am aware of this firm's commitment to ensure that a third of the human models depicted in real estate ad-

vertisements we design or produce are black. I also understand the requirement that all of the real estate advertisements we design or produce must contain the equal housing opportunity logo, statement or slogan in conformance with federal regulations. I have been instructed about and I fully understand my individual responsibilities related to these requirements, including any recordkeeping and reporting duties connected therewith.

I further understand that the above-described duties are required terms of my employment with this company and that any breach or failure to comply with such duties may subject me to dismissal or other disciplinary action as would the breach of any other condition of employment.

_____
Signature     Date

_____
(Employee or Agent)

WEEKLY SUMMARY — Week of _____ .

Advertiser (Development/Owner/Sales Agent): _____

| Name of Complex or Development | Advertising Company | Media | Date | Page | Logo/Statement | | | Human Models | | | | Location of Complex |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Conform | Non-Conform | None | Category 1 | | Category 2 | | |
| | | | | | | | | # Whites | # Blacks | # Whites | # Blacks | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

ATTACHMENT B

SIX-MONTH SUMMARY - _____ to _____, 19___.

Advertiser: _____

| Name of Complex or Development | # of Ads | # w/ Conf. Logos | # w/ Non. Conf. Logos | # w/no Logos | CATEGORY 1 ADS | | | CATEGORY 2 ADS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Total # Ads | Total # Models | Total # Blacks | Total # Ads | Total # Models | Total # Blacks |
| | | | | | | | | | | |

ATTACHMENT C